UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL R. SIMPSON, *et al.*,

    Plaintiffs,

vs.

MEYER R. TOOL, INC., *et al.*,

    Defendants.

Case No. 1:04-cv-704

Dlott, C.J.
Black, M.J.

**REPORT AND RECOMMENDATION[1] THAT PLAINTIFF'S MOTION TO REVERSE THE ADMINISTRATIVE DECISION (Doc. 54) BE DENIED; DEFENDANT'S MOTION TO AFFIRM THE ADMINISTRATIVE DECISION (Doc. 55) BE GRANTED; JUDGMENT BE ENTERED IN FAVOR OF DEFENDANT AND THIS CASE CLOSED.**

This is an ERISA action wherein plaintiff Community Insurance Company, d/b/a Anthem Blue Cross Blue Shield ("Anthem") is seeking reimbursement of claims it paid on behalf of Michael Simpson after his claim for benefits under a group life insurance policy issued by defendant Meyer Tool, Inc. ("Meyer Tool") was denied. At issue is whether Meyer Tool's denial of coverage was arbitrary and capricious.

This case is now before the Court on Anthem's motion for judgment on the Administrative Record (doc. 54), Meyer Tool's motion for judgment on the Administrative Record (doc. 55), and the parties' responsive memoranda (docs. 56, 57.)

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

# I. BACKGROUND AND PROCEDURAL HISTORY

As an employee of Meyer Tool, Simpson participated in the Meyer Tool, Inc. Employee Health Benefits Plan (hereinafter "The Plan"). The Plan was administered by Meyer Tool, which made decisions regarding payment of benefits; and the Plan was managed, at the direction of Meyer Tool, by former defendant Medical Benefit Administrators, Inc. ("Med Ben".) (*See* Doc. Administrative Record ("AR") 15, 19, 31). Anthem provided secondary medical insurance to Mr. Simpson during this time pursuant to its policy #0070138 with Mr. Simpson's wife's employer.

   A.   *Procedural History*

On March 8, 2007, plaintiffs Michael R. Simpson and Claudette Simpson (collectively the "Simpsons") voluntarily dismissed their claims against the defendants in this action pursuant to Fed. R. Civ. P. 41 (a)(1). That same day, all parties stipulated to the voluntary dismissal of defendant Med Ben, and all cross claims asserted by Med Ben. Therefore, the remaining parties are Anthem and Meyer Tool.

Anthem brings this action to assert the rights of the Simpsons under the subrogation provision contained in Anthem's certificate of insurance. Anthem has paid $506,250.74 in medical care costs on behalf of Mr. Simpson relating the accident at issue. (Downing Aff. ¶ 2.) As the secondary insurer, Anthem asserts that it is not responsible for these payments if it is determined that Meyer Tool wrongly denied Mr. Simpson's claims.

A. *The Plan*

Section 9.1 of Article IX of The Plan provides that in order to be eligible for benefits, "charges incurred by a Covered Person must be administered…for the treatment of an injury." (AR 46). "Injury" is defined as "an accidental physical injury to the body caused by unexpected external means which does not arise out of or in the course of employment." (AR 17).

Section 12.1 of Article XII of The Plan lists exclusions and limitations of coverage. (AR 59). Subsection C excludes from coverage "Charges related to self-inflicted Injuries or Illnesses, to the extent not caused by an underlying medical condition." *Id*.

Moreover, Section 4.5 of The Plan states:

Nothing in this Plan precludes the Plan Administrator from exercising full discretionary authority and responsibility with respect to all aspects of Plan administration and interpretation. `(AR. 31).

B.     *The Accident*

On July 13, 2003, at around 8:40 p.m., Michael Simpson left his employer, Meyer Tool, after the conclusion of his shift. He was not due to return to work until 5:30 p.m. the following day. However, on July 14, 2003 at approximately 3:46 a.m., Simpson drove his pick-up truck directly into a trash dumpster located at the northeast corner of the Meyer Tool parking lot. The force of the truck caused the dumpster to become airborne and land on the vehicle. At the time of the incident, Simpson had been working at Meyer Tool for approximately three and a half years.

According to the preliminary police report, Mr. Simpson's truck hit the dumpster and tipped it up off the ground. (AR 91) The dumpster then fell on the cab of Mr. Simpson's truck. *Id.* The momentum of Mr. Simpson's truck then carried the truck and the dumpster several more feet to where the truck struck the Meyer Tool building, finally coming to rest. As result of the crash, Mr. Simpson suffered injuries, including but not limited to, laceration of his spinal cord at the cervical vertebrae, which resulted in quadriplegia and ventilator dependence.

Mr. Simpson's blood alcohol level at the time of the accident was 0.10%, which is above the legal limit in Ohio. According to the police report, it was a clear night, the pavement was dry, and the parking lot was adequately lit. (AR 91).

C. *Plaintiff's Claim for Benefits*

Pursuant to the Plan, Simpson submitted claims for his accident-related medical expense to Meyer Tool through its benefits manager, Med Ben. However, on September 10, 2003, Meyer Tool denied such benefits pursuant to exclusion 12.1(c) which states that The Plan will not compensate expenses incurred as a result of self-inflicted injuries. (Doc. 55, p. 2)

On December 5, 2003, Simpson timely appealed this decision.

On December 3, 2003, Meyer Tool hired a vehicle collision expert, MV Engineering. As part of its analysis, MV Engineering reviewed photographs of the scene taken the night of the collision. (AR 148). It then examined the condition of the asphalt

as of December 3, 2003. *Id.*

Initially, it was believed that the tire marks and scrapes on the pavement were made immediately before the collision. *Id.* However, a comparison of the photographs to the asphalt led MV Engineering to conclude that these markings were made when the truck was dragged away from the dumpster. *Id.* Moreover, these markings were not identified by the investigating officer as significant physical evidence. *Id.* at 148-49.

MV Engineering also found that Mr. Simpson was travailing approximately 28 to 30 miles per hour at impact, a speed that "was altogether inappropriate for the restricted distances and tight spaces present in the parking lot." *Id.* at 150

MV Engineering also sketched the collision based on the investigating officer's measurements. This analysis led MV Engineering to conclude that "the available evidence provides no indication of any last-second evasive action having been taken by Mr. Simpson prior to the collision with the dumpster." Based on the report, the Administrator concluded that Mr. Simpson drove unreasonably and did not, in any way, attempt to avoid the dumpster. *Id.*

Additionally, on December 5, 2003, Meyer Tool interviewed Mr. Simpson's friend and co-worker, Rebecca McCurry. (AR 109.) Prior to the collision, McCurry noted that Simpson was speaking with co-workers at lunch about depression. *Id.* McCurry stated that "What [Simpson] said was the answer to everybody there. [Simpson] said it would be fast, he said 60 miles an hour into a brick wall." *Id.* When asked by McCurry if he was

serious, Mr. Simpson started laughing and telling her that he was "only kiddin' around with ya." *Id*.

Additionally, the night of the incident, Simpson left McCurry a message, asking her to meet up with him. *Id*. at 110. McCurry understood Simpson's message to mean, "If you don't come down here, I'm going to see [my] mom." *Id*. McCurry was confused by this because Simpson's mother is deceased. *Id*. at 109. McCurry never met up with Simpson. Approximately four hours later, he ran his truck into the dumpster.

On January 16, 2004, Meyer Tool denied the appeal, finding that the collision was intentional. This decision was based on the odd circumstances of the collision, the police report, analysis and report of the collision by MV Engineering, the statements of co-worker Rebecca McCurry, and pictures of the collision.

Now before the Court are the Anthem's and Meyer Tool's cross-motions for judgment on the administrative record.

## II. STANDARD OF REVIEW

The Court reviews *de novo* a denial of benefits under an ERISA plan "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *University Hosps. v. Emerson Elec. Co.,* 202 F.3d 839, 845 (6th Cir. 2000). If an administrator has such discretionary authority, the Court reviews the denial of benefits under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111 (1989); *University Hosps.,* 202

F.3d at 845.

Here, the undersigned finds that the arbitrary and capricious standard applies in the present case because the long term disability insurance policy at issue gives Meyer Tool discretionary authority. "When a plan administrator has discretionary authority to determine benefits, [the Court] will review a decision to deny benefits under 'the highly deferential arbitrary and capricious standard of review.'" *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (quoting *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996)).

Nonetheless, as noted by the Sixth Circuit, merely because the review is deferential does not mean that it is inconsequential. *Moon v. UNUM Provident Corp.,* 405 F.3d 373, 379 (6th Cir. 2005). The court explained as follows:

> While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber-stamping those decisions. As we observed recently, "[t]he arbitrary-and-capricious ... standard does not require us merely to rubber stamp the administrator's decision." *Jones v. Metropolitan Life Ins. Co.,* 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003)). Indeed, "[d]eferential review is not no review, and deference need not be abject." *McDonald,* 347 F.3d at 172. Our task at all events is to "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Id.*

*Id.*

Only if the administrative record supports a "reasoned explanation" for the termination of benefits is the decision not arbitrary or capricious. *See Williams v. International Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000) (cited in *Moon,* 2005 WL 664330, at *5). That is, the decision of the administrator is upheld if it is the result of a

-7-

deliberate principled reasoning process, if it is supported by substantial evidence, and if it is based upon a reasonable interpretation of the plan. *Glenn v. MetLife, et al.*, --- F.3d ----, 2006 WL 2519293 *5 (6th Cir. Sept. 1, 2006) (quoting *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).

## VI. ANALYSIS

Meyer Tool denied Mr. Simpson's initial claim for benefits based on "the improbability that Mr. Simpson would accidentally hit the dumpster head on at it's then location with such force that it would come to rest on top of his truck." (AR 101) Meyer Tool also denied Mr. Simpson's appeal based on the odd circumstances of the collision, the police report, analysis and report of the collision by MV Engineering, the statements of co-worker Rebecca McCurry, and pictures of the collision.

Anthem, however, asserts that Meyer Tool retained an expert to investigate and interview witnesses months after the initial denial. Anthem therefore maintains that Meyer Tool's decision is unsupported by substantial evidence because Meyer Tool based its initial denial solely on the police report, which Anthem believes contains no suggestion that the crash was self-inflicted. (AR 89-92).[2]

---

[2] Anthem further asserts that Mr. Simpson received no formal denial letter outlining the reasons for Meyer Tool's decision to deny his claims, and that Meyer Tool failed to disclose the notes of Rebecca Curry's interview. However, as noted by Meyer Tool, the record reveals that prior to his appeal, Mr. Simpson received notice of denial of benefits and was told exactly why his claim was denied. In his October 15, 2003 letter to the Plan Administrator, Douglas J. May wrote, "Also, please be advised the Claimant appeals your determination to deny medical benefits pursuant to page 59, Item C of the Coverage Booklet, specifically 'self-inflicted injury.'" (AR. 0093.) Mr. Simpson was aware that his claim had been denied pursuant to the exclusion for self-inflicted injury. Additionally, Meyer Tool maintains that because there has been no discovery in this case, it is clear that the interview notes were disclosed at some point during the administrative process because Anthem quotes McCurry in their memorandum. More importantly, Anthem's only pending ERISA claim was brought pursuant to 29 U.S.C. § 1132(a)(1)(B) for failure to pay benefits due under the Plan. Anthem now appears to be alleging a claim for breach of fiduciary duty under ERISA; however, it cannot use those allegations to obtain the benefits its seeks in this case. *See Varity Corp. v. Howe*, 516 U.S. 489 (1996) (A plaintiff may not obtain an award of disability benefits as a remedy for an alleged

As noted above, the decision of the administrator is upheld if it is the result of a deliberate principled reasoning process, if it is supported by substantial evidence, and if it is based upon a reasonable interpretation of the plan. *Glenn v. MetLife*, *et al.*, --- F.3d ----, 2006 WL 2519293 *5 (6th Cir. Sept. 1, 2006) (quoting *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).

Furthermore, the Sixth Circuit has held district courts "must accept the administrator's rational interpretation of the plan even in the face of an equally rational interpretation offered by the participants." *Kovach v. Zurich Am. Ins. co,* 2008 WL 4449459, 5 (N.D. Ohio 2008) (citing *Gismondi v. United Tech. Corp.*, 408 F.3d 295, 298 (6th Cir.2005)). Furthermore, when a Plan grants discretion to the Plan Administrator to interpret the Plan, the Court must give great leeway to the Administrator's interpretation of ambiguous and general terms. *Jones v. Metropolitan Life Ins. Co.,* 385 F.3d 654, 661 (6th Cir.2004).

Based on the evidence of record and, in light of relevant case law, the undersigned finds that Meyer Tool's interpretation was rational and its decision to deny benefits was not arbitrary and capricious.

As detailed above, there were no markings on the pavement to suggest Mr. Simpson tried to brake or avoid hitting the dumpster. Mr. Simpson was driving approximately 28-30 miles per hour in a constricted section of the parking lot at time when the plant was closed and the lot was empty. While 30 miles per hour may be a

---

breach of fiduciary duty.)

"relatively low speed" as noted by Anthem, MV Engineering found that this speed is totally inappropriate for a tight-spaced, dead-end corner of the parking lot. (AR 150) Notably, if Mr. Simpson were trying to leave the lot, he did not need to go near the dumpster. He went out of his way to strike it. Lastly, months prior to the incident, while discussing depression with co-workers, Mr. Simpson suggested an answer. "[Simpson] said it would be fast, he said 60 miles an hour into a brick wall." R. 00109.

Furthermore, Anthem's assertion that Meyer Tool initially denied Mr. Simpson's claim "based on the improbability that Mr. Simpson would accidentally hit the dumpster…" and without any investigation or evidence to support its decision, lacks merit.[3]

Upon careful review and looking only at the circumstances of the collision and the police report, the undersigned finds that Meyer Tool's initial denial of Mr. Simpson's claim based on "the improbability that Mr. Simpson would accidentally hit the dumpster head on at it's then location" was not irrational and is supported by substantial evidence.

As noted above, this incident took place at approximately 3:46 a.m. despite that fact that Simpson was not expected back at work until his next shift, 5:30 p.m. the following day. Simpson has been working at Meyer Tool for approximately three years, and he was therefore was well aware of the shape of building and was quite familiar with the layout of the parking lot. According to the police report, the pavement was dry and

---

[3] As noted above, Meyer Tool retained MV Engineering and interviewed Ms. McCurry after its initial denial of benefits. However, Anthem does not argue that Meyer Tool's retention of an expert and interviewing of witnesses after Mr. Simpson filed his appeal violates ERISA.

-10-

the parking lot was adequately lit. Furthermore, Mr. Simpson's blood alcohol level at the time of the accident was 0.10% which is above the legal limit in Ohio.

Based on the foregoing, the undersigned finds that Meyer Tool's decision to deny benefits was not arbitrary and capricious. The record contains substantial evidence to support Meyer Tool's conclusion that the collision was not accidental.

### IV. CONCLUSION

Accordingly, in light of these findings, Meyer Tool's decision - to deny Mr. Simpson's claim for benefits - was neither arbitrary nor capricious. *See Yeager,* 88 F.3d at 381-82.

It is hereby **RECOMMENDED** that Anthem's motion to reverse the administrative decision (doc. 54) be **DENIED**; Meyer Tool's motion to affirm the administrative record (doc. 55) be **GRANTED**; judgment be **ENTERED IN FAVOR OF MEYER TOOL,** and this case be **TERMINATED UPON THE DOCKET**

**IT IS SO RECOMMENDED**.

Date: February 19, 2009                                s/Timothy S. Black
                                                      Timothy S. Black
                                                      United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL R. SIMPSON, *et al.*,

    Plaintiffs,

vs.

MEYER R. TOOL, INC., *et al.*,

    Defendants.

Case No. 1:04-cv-704

Dlott, J.
Black, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN (10) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).